**NADLER FOUNDRY AND MACHINE COMPANY, INC.,**

v.

**UNITED STATES.**

No. 389–54.

United States Court of Claims.
July 16, 1958.

Paul G. Borron, Jr., Baton Rouge, La., for plaintiff. Frederick O. Graves and Miller & Chevalier, Washington, D. C., were on the briefs.

Thomas L. McKevitt, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

MADDEN, Judge.

█ The plaintiff sues to recover just compensation for the alleged taking of its property by the United States. It is the owner of land situated on the north bank of Bayou Plaquemine in the State of Louisiana. It asserts that the Government took its property by dredging a ship channel in the bayou so close to the low water mark, the boundary of the plaintiff's land under the law of Louisiana, that the plaintiff's soil caved, some of its land became submerged, and the stability of other land became so endangered that the plaintiff was obliged to build an expensive bulkhead to preserve its stability.

In 1888 Congress provided by law for the dredging of a channel through Bayou Plaquemine, to connect the lower Atchafalaya River to the Mississippi River. A channel with a bottom width of 95 feet and a depth of 10 feet at low water mark was dredged. In order to provide sloping sides for the channel, a width of about 200 feet was dredged, and the north bank was cut back from 25 to 40 feet beyond the then low water mark. This work was completed in 1911.

The plaintiff acquired its land in several parcels, the last acquisition being in 1919. The land had a frontage of some 245 feet on the north bank of the bayou. Adjacent to the bayou there was a flat area some seven or eight feet above low water mark, and 20 to 30 feet wide. Then there was a steep bank some 18 feet high, and the rest of the plaintiff's land was on this higher level. The plaintiff's buildings, a machine shop, storehouse, pattern shop and office were located on the high ground. The ground on the lower level was used in connection with repair work on vessels.

By statutes in 1925 and 1927 Congress provided for improvements in the New Orleans-Sabine River section of the Intracoastal Waterway, and specified a bottom width of 100 feet and a nine-foot depth for the channel in Bayou Plaquemine. 43 Stat. 1186; 44 Stat. 1010. This work was completed by June 30, 1934.

From the year 1905 down to date the Government, through the Corps of Engineers, has, in all except five years, dredged the channel in the bayou in front of the plaintiff's property, but since 1934 the dredging has been for maintenance purposes only. Between the years 1926 and 1934 substantially all of plaintiff's land on the lower level caved into the bayou, and the water line thus came near to the bottom of the slope leading to the plaintiff's high ground. In 1934 there was an extensive cave-in of the higher land, the plaintiff losing some six or seven feet of its high level land at its eastern border, and some 18 feet at its western border. The plaintiff, in an effort to prevent further caving, in 1935 drove a row of 40- to 50-foot cypress piles, spaced four feet on centers, just above the low water level. The piling was not effective for the purpose and within seven or eight years the piles broke off and disappeared. In 1939 the plaintiff removed a bay or section of a building which stood close to the edge of the receding bank.

After the extensive cave-in in 1934 the edge of the upper bank continued to disintegrate, and by the year 1951 had receded four or five feet farther at the east end of the plaintiff's property, and 15 feet at the west end. In 1950 the plaintiff was advised by an engineer that unless protective steps were taken the plaintiff's buildings were in danger of destruction by the caving of the land on which they stood. In late 1950 and early 1951 the caving of the land had greatly accelerated after the removal of the old highway bridge and its abutments. The plaintiff demanded that the Government construct the necessary pro-

tection, and said that if it refused to do so, the plaintiff would do it and hold the Government responsible for its cost. The Government rejected the demand. The plaintiff then obtained from the Corps of Engineers a permit to erect a sheet steel pile bulkhead across the face of its property at the water's edge. The bulkhead was constructed at a cost of $45,395.71. The present suit is for this amount, plus the value of the land which had caved in before the bulkhead was constructed.

The plaintiff's petition was filed on October 1, 1954. The Government pleads the statute of limitations, asserting that the wrongs complained of, if any were committed, occurred more than six years before the suit was filed. 28 U.S.C. § 2501.

As we have seen, by 1934 practically all of the lower level of the plaintiff's land had caved into the water, and the surface of the water thus came close to the edge of the steep slope at the bottom of the high bank. Then the extensive cave-in of the high bank occurred, the ineffective attempt to protect the bank was made, and the caving continued until an adequate bulkhead was installed.

The plaintiff argues that the doctrine of United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789, permits it to base its cause of action upon acts and events occurring before October 1, 1948, the date six years before its petition was filed. In the Dickinson case the Court held that a landowner whose land would be submerged by the lake created by the construction of a dam by the Government, although it would not be premature for him to bring suit as soon as the dam was completed, could bring suit within six years after the water reached its ultimate level because the statute of limitations did not begin to run until the lake was filled, "until the consequences of inundation have so manifested themselves that a final account may be struck."

We think the plaintiff would carry the Dickinson doctrine too far. As this Court said in Columbia Basin Orchard v. United States, 88 F.Supp. 738, 739,

116 Ct.Cl. 348, 357, the Dickinson doctrine does not permit a plaintiff to wait "until any possibility of further damage (has) been removed." In the instant case when, before 1934, the water had practically reached the bottom of the steep bank sloping up to the upper level land, the ultimate cave-in of that land was a foreseeable future event. In 1934 there was an extensive cave-in, and the caving process was continuous from that time. If the upper level land was to be saved, a bulkhead had to be built. An ineffective one was built in 1935, which showed that the plaintiff was then aware of what would happen to the land in the course of time.

The very same suit, on the same grounds and for the same damages, could have been brought by the plaintiff at least as long ago as 1934. If it had been brought at that time, questions of fact the solution of which is difficult on the present record would or might have been easier to solve. The purpose as well as the period of the statute of limitations argue against the plaintiff.

■ In the instant case the bayou had encroached upon the plaintiff's land. It may have done so by reason of erosion from natural causes, or it may have done so because of the Government's removal of lateral support by the dredging of the channel, although the present record fails to prove this latter possibility. If the latter, and if such removal of lateral support ever was an actionable taking of the plaintiff's land, it occurred so long ago that any right of recovery is barred by the statute of limitations. Since the additional area of water had now become a part of the navigable stream, the Government's easement of navigation, and of deepening the channel in aid of navigation would seem to be applicable. Whether the boundary line of the plaintiff's ownership had shifted with the shift of the water line would seem to be immaterial. The doctrine in some states that the private owner along a stream owns to the thread of the stream does not affect the Government's easement of navigation.

The parties have not been able to cite any decision on the question whether the Government, in the exercise of its easement of improving navigation by deepening a channel, is liable to an abutting owner for the removal of lateral support from his land. Our conclusion that, if such removal of support occurred in this case, it occurred so long ago that a claim based upon it is barred by the statute of limitations, prevents us from reaching that question.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.

Madden, J., dissented.